**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**VENETIA D. BELL,**
**One Joicy Court**
**Woodlawn, Maryland 21207,**

**Plaintiff,**

**v.**

**DR. BENJAMIN S. CARSON, SR., M.D.**
**U.S. Secretary of Housing and Urban Development**
**451 Seventh Street, S.W.**
**Washington, DC 204101,**

**Defendant.**

**Civil Action No. ____________________**

**COMPLAINT**
(Employment Discrimination and Retaliation)

**Introduction**

1. Plaintiff Venetia D. Bell brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*, and 42 U.S.C. § 1981a, to remedy acts of discrimination in employment practices by the U.S. Department of Housing and Urban Development and its Office of Inspector General based on her race (African American) and her sex (female), and in retaliation for her engaging in protected EEO activities.

**Exhaustion of Administrative Remedies**

2. Plaintiff initiated two formal administrative complaints of discrimination pursuant to the regulations of the U.S. Equal Employment Opportunity Commission with the civil rights office of the U.S. Department of Housing and Urban Development. The first of these formal

administrative complaints of discrimination was lodged on January 11, 2018 (Agency Complaint No. HUD-00003-2018) and alleged discrimination on the basis of race and sex in employment practices, and retaliation for complaining about such discrimination; it involved multiple and ongoing instances of mistreatment by plaintiff's management at the Office of Legal Counsel in the Office of the Inspector General, U.S. Department of Housing and Urban Development, during the period following June 2017. The second of the two formal administrative complaints of discrimination was lodged by Ms. Bell on January 24, 2020 (Agency Complaint No. HUD-0043-2020). In that complaint, plaintiff alleged retaliation by her management for making and prosecuting the earlier allegations (*i.e.*, those contained in HUD-00003-2018) by lowering her rating in the annual performance appraisal for the period October 1, 2018 through September 30, 2019. To date, no final agency decision ("FAD") has been issued on either of these formal EEO administrative complaints by the U.S. Department of Housing and Urban Development's Office of Departmental Equal Employment Opportunity, and more than 180 days have elapsed since Ms. Bell initiated each of these formal EEO complaints. Thus, plaintiff is deemed to have exhausted her available administrative remedies under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, with regard to the claims contained in each such administrative complaint so as to vest the U.S. District Court with jurisdiction to hear the claims contained in both these formal administrative EEO complaints.

**Jurisdiction**

3. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16(c),, plaintiff having exhausted her available administrative remedies with regard to all the claims contained herein.

**Venue**

4. Pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), venue is proper in this judicial district as plaintiff is and at all times relevant to the allegations contained in the complaint was employed by the U.S. Department of Housing and Urban Development, Office of the Inspector General, within the District of Columbia, which is where the acts of discrimination complained of took place, and where plaintiff's personnel records are maintained by defendant.

**Parties**

5. Plaintiff Venetia D. Bell is an African American female who is a citizen of the United States and of the State of Maryland. She was at all times relevant to the allegations contained in this Complaint employed as Senior Attorney-Advisor, GS-0905-15 (at the Step 8 since May 2019), with the Office of Legal Counsel of the Office of the Inspector General ("OIG"), U.S. Department of Housing and Urban Development ("HUD").

6. Defendant Dr. Benjamin S. Carson, Sr., M.D., is the Secretary of Housing and Urban Development, and as such is the head of the U.S. Department of Housing and Urban Development ("HUD"), a department within the Executive Branch of the government of the United States that has employed more than 500 persons in each of the last 20 weeks. He is here sued in his official capacity only.

**Statement of Facts**

7. Venetia Bell is a licensed attorney who has been practicing law for more than 20 years. After working for state governmental entities, in-house for Fortune 500 companies, and in private practice of law at mid-size law firms, she began a federal career in August 2002 as a GS-13 Associate Counsel to the Inspector General of Department of Transportation ("DOT OIG"). Ms.

Bell remained with DOT OIG until December 2005, having been promoted to the GS-14 level after completion of her probationary year, when she moved to the Federal Maritime Commission ("FMC") as a GS-14 Attorney/Mediator. While serving in that position, Ms. Bell was offered the job of Counsel to the Inspector General at FMC and joined that office in 2009 as a GS-14 Attorney Advisor to serve as Counsel to the Inspector General / Chief Investigator. During her time with FMC OIG, she completed a six-month detail as a Special Assistant U.S. Attorney serving in the Civil Division of the Office of the United States Attorney for the District of Columbia. With the exception of 2005 when she transitioned from DOT OIG to FMC, from 2002 – 2019, plaintiff recieved performance award, several time-off awards, an OIG new employee of the year award, an official commendation for job performance, and a quality step increase ("QSI") .

8. In June 2014, Ms. Bell began her employment with HUD OIG as a Senior Attorney-Advisor. During her first three and a half years with the organization (June 2014 – September 2017), Ms. Bell has received "excellent" or "outstanding" ratings on the critical job performance elements and an overall "excellent" on her annual performance appraisals. She has been commended for her professionalism, her work ethic, and her ability to work well with others as well as in teams. She was asked to become a supervisor during a period of expansion, and served in that capacity from October 2015 until the office reduced in size in June 2016. Until February of 2020, she was the only African American attorney in the HUD OIG's Office of Legal Counsel.

9. In February 2017, another GS-15 attorney became the new Deputy Counsel to the Inspector General, and thus plaintiff's immediate supervisor. This person, a white female named Maura Malone, immediately began to exhibit a hostile attitude toward Ms. Bell upon taking up the position of Deputy Counsel. At first Ms. Bell considered Ms. Malone's negativity toward her the

product of mere misunderstanding and a lack of supervisory experience on Ms. Malone's part. By June 2017, however, it became clear to Ms. Bell that Ms. Malone was engaged in a campaign to harass her and discredit her work as an attorney at the OIG because she was an African American woman. Indeed, white male lawyers in the Office of Legal Counsel were regularly treated more professionally and with more courtesy by management than was Ms. Bell. In this discriminatory treatment of Ms. Bell, Ms. Malone at all times acted with the support of the Legal Counsel (and acting Deputy Inspector General) Jeremy Kirkland, a white male. The principle actions making up this discriminatory campaign of harassment engaged in by Maura Malone included, *inter alia*:

a. On June 6, 2017, during a mid-year performance review, Ms. Malone falsely accused Ms. Bell of having behaved with hostility towards another staff attorney;

b. On June 23, 2017, without sufficient cause, Ms. Malone insisted that Ms. Bell switch her telework day in order to attend a meeting, though Ms. Bell regularly did so;

c. On July 19, 2017, Ms. Malone failed to approve Ms. Bell's wholly legitimate request for credit hours (even though she had approved a similar request a few weeks previous);

d. On July 21, 2017, as on June 26, 2017, Ms. Malone needled Ms. Bell with unnecessary – and thus harassing – "gentle reminders" to submit work projects that were already completed and submitted;

e. During the week of August 11, 2017, Ms. Malone required Ms. Bell to attend approximately six hours of staff meetings during an office conference despite the fact that she knew Ms. Bell was preparing for an U.S. Merit Systems Protection Board ("MSPB") hearing in which she was representing OIG at the time. This contrasts

sharply with Ms. Malone's decision to change a subsequent meeting schedule to accommodate a white male attorney on the OIG Legal Counsel's staff who had an upcoming trial.

f. On August 12, 2017, Ms. Malone treated Ms. Bell in a nakedly hostile manner in front of colleagues in the OIG Office of Legal Counsel and spoke to her in a condescending and derogatory manner, which also contrasted ingwith way Ms. Malone spoke to white male attorney subordinates.

g. On September 28, 2017, Ms. Malone spoke to Ms. Bell about meeting protocol in a disrespectful and condescending tone, and was outright abusive toward Ms. Bell in a way that she would never behave toward white male attorneys in OIG.

In addition to torment and vexing plaintiff, these and other ongoing acts of abuse and harassment by management adversely effected Ms. Bell's ability to perform her duties and responsibilities as a Senior Attorney in the Office of Counsel to the Inspector General at HUD.

10. By September 29, 2017, Ms. Bell had suffered enough of Ms. Malone's mistreatment to consult with OIG's Human Resources officials and its Special Investigations Division and lodged a claim not only of discrimination, but also regarding rude and condescending conduct toward Ms. Bell by Ms. Malone, with OIG's internal Integrity Compliance Program Director. The OIG conducted an abbreviated and incomplete internal inquiry concerning Ms. Bell's claims of management misconduct, and although the person who conducted this inquiry, Athena Jones, corroborated Ms. Bell's allegations against Ms. Malone, neither she nor the Counsel to the Inspector General, and Acting Deputy Inspector General, Jeremy Kirkland, took any corrective action toward Ms. Bell, nor did Mr. Kirkland initiate any disciplinary action against Ms. Malone. Accordingly,

on October 11, 2017, Ms. Bell initiated an informal pre-complaint of employment discrimination with the appropriate HUD office. Whereupon, HUD OIG appointed a senior agency official, Brian Pattinson, to look into and address plaintiff's concerns and allegation of race and sex discrimination, including to meet with Ms. Malone and discuss Ms. Bell's allegations and concerns in this regarding. A meeting in this regard between Mr. Pattinson and Ms. Malone took place on Monday, November 20, 2017 to prepare for mediation two weeks hence. Accordingly, it is plain that by not later than November 20, 2017, Ms. Malone was fully aware of Ms. Bell's claims of race and sex discriminatory conduct toward her; indeed, Ms. Malone admitted that she had become aware of Ms. Bell's EEO complaint in October 2017 and that she had received a copy of the complaint on November 17, 2017.

11. On Friday, November 23, 2017, the day after Thanksgiving and just three working days after her meeting with Brian Pattinson regarding Ms. Bell's allegations of race and sex discrimination against her by Ms. Malone, out of the blue Maura Malone issued Ms. Bell a official Letter of Reprimand for alleged "inappropriate behavior" – allegations for which there was no credible basis. Indeed, several weeks later, Ms. Malone produced documents which, though purporting to support her allegations against Ms. Bell, in fact demonstrated that there was no credible bases for her issuing the Letter of Reprimand. In fact, Ms. Malone doubled-down on her unlawful behavior by falsely asserting that Ms. Bell "as an attorney specializing in employment litigation . . . is held to a higher standard." In any case, the issuance of the Letter of Reprimand was authorized by Ms. Malone's supervisor, the Counsel to the Inspector General and the Acting Deputy Inspector General Jeremy Kirkland.

12. Effective March 2, 2018, Maura Malone stepped down as Deputy Counsel to the Inspector General, and thus as Ms. Bell's immediate supervisor, and became a Senior Attorney-

Advisor in the Office of Legal Counsel, with Ms. Athena Jones becoming the new Deputy Legal Counsel effective March 5, 2018. However, approximately one week later Ms. Malone – no longer Ms. Bell's supervisor or superior in any way – was permitted by Mr. Kirkland to change the Letter of Reprimand into a Counseling Memorandum and issue it to Ms. Bell, four days later entering her office and demanding that Ms. Bell sign and return this memorandum to her.

13. As a result of this continued bullying and abusive behavior, Ms. Bell repeatedly requested that she be required to have no interaction with Ms. Malone, and Mr. Kirkland and Ms. Jones direct Ms. Malone to leave Ms. Bell alone. Moreover, Ms. Bell repeatedly explained that Mr. Kirkland's and Ms. Jones's refusal to address Ms. Malone's misconduct in effect served to condone it and encouraged Ms. Malone to continue her discriminatory/retaliatory behavior toward Ms. Bell. Nothing was done by management to alleviate the situation. Indeed, management seemed to take efforts to put Ms. Malone in a position to continue to make false allegations and to otherwise vex Ms. Bell in the workplace.

14. As a result of Ms. Malone issuing the retaliatory Letter of Reprimand two weeks prior to the scheduled mediation of the informal EEO complaint, Ms. Bell's attempt to effectively utilize this means of alternative dispute resolution was frustrated and no acceptable result was reached with respect to Ms. Bell's EEO claims. Accordingly, through counsel Ms. Bell filed a formal EEO complaint on January 11, 2018, and when the Report of Investigation was issued, Ms. Bell requested a hearing before an Administrative Judge employed by the U.S. Equal Employment Opportunity Commission ("EEOC"). On October 30, 2019, the assigned EEOC Administrative Judge issued an Order of Acknowledgment and Scheduling of Initial Teleconference for November 19, 2019, thereby

notifying the OIG that Ms. Bell had requested an EEOC hearing on her discrimination/retaliation claims.

15. In the immediate wake of the Order issued by the EEOC Administrative Judge, in a November 2019 discussion of her annual performance with Ms. Bell , Athena Jones, Ms. Bell's then-supervisor, informed Ms. Bell she was going to rate her a mere "fully successful" for the 2018-2019 performance period. This was the very lowest rating Ms. Bell had ever obtained while at HUD OIG, and it was a shock to her. However, the "fully successful" rating is completely at odds with the narrative written by Ms. Jones in support of that rating. Indeed, the narrative is overwhelmingly glowing in its description of Ms. Bell's job performance. In fact, the only comment not particularly positive in the appraisal was that Ms. Jones said she wanted Ms. Bell to take a greater leadership role in the office, which was never mentioned to Ms. Bell prior to the issuance of the appraisal on November 26, 2019 – which was just two weeks after the issuance of the EEOC Administrative Judge's initial Order when OIG management knew of Ms. Bell seeking an EEOC hearing on her claims. Finally, it became clear from her discussion with Ms. Jones about the rating that it was not a real reflection on the quality of her job performance, but rather reflected management's retaliatory reaction to her EEO activities. Indeed, while having claimed during the November 2019 discussion that preceded the issuance of the written annual performance appraisal of "fully successful" that this rating was the result of Ms. Bell's having earlier possibly hurt the feeling of Ms. Malone, later Ms. Jones asserted that the "fully successful" rating was caused by Ms. Bell "complaining and making disparaging remarks about office management and her colleagues."

16. In response to the "fully successful" rating by Ms. Jones, Ms. Bell again initiated the EEO process alleging continuing retaliation on the part of management for her having pressed her

previous, but ongoing, discrimination and retaliation claims, *i.e.*, the claims involved in the complaint then pending at the EEOC for a hearing. Once she completed the informal complaint process without an acceptable result, Ms. Bell filed a formal EEO administrative complaint ed discrimination.

**Statement of Claims**

**Claim I - Race and Sex Discrimination**

17. By decisions, actions, and/or omissions as outlined herein above at paragraph numbers 7 through 12, defendant through his subordinates, discriminated against plaintiff on account of her race (African American) and/or her sex (female).

18. As a consequence of the aforementioned unlawful discrimination in employment practices at HUD's OIG, plaintiff has suffered and continues to suffer loss promotional and employment opportunity (including the opportunity for increased retirement benefits), other career damage, damage to her reputation and professional standing, personal and professional humiliation and embarrassment, emotional pain and suffering, and a denial of enjoyment of life.

**Claim II - Retaliation**

19. By decisions, actions, and/or omissions as outlined herein above at paragraph numbers 10 through 16, defendant through his subordinates retaliated against plaintiff because of her prior and ongoing EEO activity.

20. As a result of the aforementioned unlawful retaliation for engaging in protected activity by her managers at HUD OIG, plaintiff has suffered and continues to suffer loss of promotional and employment opportunity (including the opportunity for increased retirement benefits), other career damage, damage to her reputation and professional standing, personal and

professional humiliation and embarrassment, emotional pain and suffering, and a denial of enjoyment of life.

## Prayer for Relief

**WHEREFORE**, plaintiff prays that this Court enter judgment in her favor and against defendant on all her claims, and provide her with the following relief:

a. award plaintiff compensatory damages against defendant in the amount of $300,000, plus interest thereon for each violation of her rights;

b. void *ab initio* any and all disciplinary actions taken or proposed against plaintiff by the OIG management since 2017, including any letters of warning or the like and all less than outstanding performance appraisals ;

c. provide plaintiff with outstanding annual performance ratings for all performance periods since 2017, with commensurate pay and step increases provided as awards of back pay;

d. order defendant to correct all records, including plaintiff's official personnel folder to accord with and document the relief awarded by the Court;

e. enjoin defendant and HUD and HUD OIG management from discriminating and/or retaliating against plaintiff in the future;

f. award plaintiff the costs of bringing and maintaining this civil action and the administrative claims that preceded it, including reasonable attorneys' fees, pursuant to 42 U.S.C. 2000e-5(k); and

g. award plaintiff such other and further relief as the interests of justice may require.

**Jury Demand**

Plaintiff hereby requests a jury trial on all issues of fact and measure of damages.

Respectfully submitted,

/S/ David H. Shapiro

David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C.
1101 15th Street, N.W.
Suite 205
Washington, DC 20005
Tel. (202) 842-0300
Fax (202) 842-1418
Email - dhshapiro@swickandshapiro.com

Attorney for Plaintiff