**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**VENETIA BELL**,

        Plaintiff,

        v.

**MARCIA FUDGE**, SECRETARY, U.S.
**DEPT. OF HOUSING AND URBAN**
**DEVELOPMENT**

        Defendant.

Case No. 20-cv-2209 (CRC)

---

**MEMORANDUM OPINION AND ORDER**

Department of Housing and Urban Development ("HUD") attorney Venetia Bell has sued the agency on claims of discrimination, hostile work environment, and retaliation. HUD moves to dismiss Bell's complaint for failure to state a claim upon which relief can be granted. For reasons discussed below, the Court will grant the motion in part and deny it in part.

**I.    Background**

The Court draws this factual background from the complaint and, as it must on a motion to dismiss, assumes the truth of all well-pled allegations. See Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014). HUD no doubt disputes many of the allegations.

Bell is an African American woman and a licensed attorney. Am. Compl. ¶¶ 5, 7. Throughout the relevant period, Bell was employed as a Senior Attorney-Advisor in the Office of Legal Counsel of the Office of the Inspector General ("OIG") within HUD. Id. ¶ 5. From the beginning of her employment with OIG in June 2014 until February 2020, Bell was the only African American attorney in that office. Id. ¶ 8.

Bell's career in OIG started positively enough. For the first few years of her tenure, she consistently received "excellent" and "outstanding" performance reviews. Id. She was also

"commended for her professionalism, her work ethic, and her ability to work well with others." Id. But, as Bell tells it, things took a turn for the worse after she got a new boss.

### 1. Initial Friction with Deputy Counsel Malone

In February 2017, Maura Malone became the new Deputy Counsel to the Inspector General, and Bell's immediate supervisor. Id. ¶ 9. As Bell recounts, Malone, who is white, "immediately began to exhibit a hostile attitude towards [her]" and "engaged in a campaign to harass her and discredit her work as an attorney at the OIG because she was an African American woman." Id. According to Bell, management regularly treated white male lawyers "more professionally and with more courtesy" than it did her. Id. Bell's complaint alleges the following specific instances of harassment by Malone during the summer and fall of 2017:

- During a mid-year performance review, Malone falsely accused Bell of behaving with hostility towards a coworker. Id. ¶ 9(a).

- Malone unnecessarily required Bell to "switch her telework day in order to attend a meeting." Id. ¶ 9(b).

- Malone twice "needled" Bell with "unnecessary" and "harassing" reminders to submit work projects. Id. ¶ 9(d). According to Bell, these "gentle reminders" were for already-submitted work. Id. (quotation marks in original).

- Malone denied a request Bell made for credit hours. Id. ¶ 9(c). Bell claims the request was "wholly legitimate" and that Malone had previously approved a similar request. Id.

- During one week, Malone required Bell to attend "approximately six hours of staff meetings" even though Malone knew that Bell was preparing to represent OIG in a Merit Systems Protection Board hearing. Id. ¶ 9(e). By contrast, Bell

claims that Malone adjusted a scheduled meeting to accommodate a white male attorney who had an upcoming trial.  Id.

- Malone once "treated Ms. Bell in a nakedly hostile manner" and "spoke to her in a condescending and derogatory manner" in front of colleagues.  Id. ¶ 9(f). Again, Bell contrasts this treatment with how Malone managed white male subordinates.  Id.

- Malone again spoke to Bell in a "disrespectful and condescending tone" and was "outright abusive."  Id. ¶ 9(g).  Bell claims that Malone "would never behave toward white male attorneys in OIG" in such a way.  Id.

   *2.  Bell's Informal Complaint*

Bell sought relief from Malone's purported harassment through HUD's administrative EEO process.  Id. ¶ 10.  First, in late September 2017, she complained to human resource officials within OIG.  The office conducted an investigation, which Bell characterizes as "abbreviated and incomplete."  According to Bell, the inquiry corroborated her claims, but no one at OIG took corrective action toward Malone.  Id.

A couple weeks later, Bell initiated an informal pre-complaint of employment discrimination with "the appropriate HUD office."  Id.  OIG appointed a senior agency official to address Bell's concerns.  As part of that process, the senior official met with Malone on November 20, 2017, in preparation for an upcoming mediation on the issue.  According to Bell, Malone became aware of her complaint at some point in October 2017 and received a copy of the complaint on November 17, 2017.  Id.

### 3.  *Letter of Reprimand and Bell's First Formal Complaint*

Three days after Malone met with the senior agency official to discuss Bell's discrimination claim, Malone issued Bell an official letter of reprimand for "inappropriate behavior."  Id. ¶ 11.  Bell insists there was no credible basis or supporting evidence for the letter. In issuing the letter, Malone asserted that "as an attorney specializing in employment litigation, [Bell] . . . is held to a higher standard."  Id.  The letter of reprimand was authorized by Malone's supervisor, Acting Deputy Inspector General Jeremy Kirkland. Id.

Bell asserts that the letter of reprimand scuttled chances of successfully mediating her informal EEO complaint.  Id. ¶ 14.  In January 2018, Bell filed a formal EEO complaint with HUD's civil rights office.  Id.

In March 2018, Malone was promoted within the Office of Legal Counsel.  Id. ¶ 12.  As a result, Malone was no longer Bell's immediate supervisor.  Athena Jones, who had previously led the "abbreviated and incomplete" HR investigation into Malone's treatment of Bell, became Bell's new immediate supervisor.  Id.   Jones is also a white woman.  Pl's Opp'n at 2.

About a week after assuming her new position, Malone downgraded Bell's letter of reprimand to a counseling memorandum.  Am. Compl. ¶ 12.  Even though she was no longer Bell's direct supervisor, Malone purportedly entered Bell's office and insisted that Bell sign and return the memorandum.  According to Bell, Acting Deputy Inspector General Kirkland permitted this action.  Id.

In response to Malone's "continued bullying and abusive behavior," Bell repeatedly asked Kirkland and Jones to intervene, but to no avail.  Id. ¶ 13.  According to Bell, Kirkland and Jones effectively condoned Malone's conduct by staying on the sidelines.

In the absence of action from OIG, Bell continued to pursue her EEO complaint.  On October 30, 2019, an EEOC Administrative Judge noticed a hearing for three weeks later.  <u>Id.</u> ¶ 14.

### 4.    *Lowered Performance Rating and Bell's Second Formal Complaint*

Shortly after the EEOC hearing notice was issued, Jones informed Bell that she would be receiving a "fully successful" rating for her performance review covering the 2018-2019 period.  <u>Id.</u> ¶ 15.  This was the lowest rating that Bell had received at OIG.  Bell claims that the rating was at odds with the "overwhelmingly glowing" narrative of her performance in the review.  <u>Id.</u>  According to Bell, Jones attributed the rating to Bell having hurt Malone's feelings and "complaining and making disparaging remarks about office management and her colleagues."  <u>Id.</u> (quotation in original).  Bell further claims the rating made her ineligible for a Performance Award reserved for higher-rated employees.  <u>Id.</u>

In response to the review, Bell initiated a second informal complaint alleging retaliation for pursuing her earlier complaint.  <u>Id.</u> ¶ 16.  She followed with another formal agency EEO complaint in January 2020.  <u>Id.</u> ¶ 2.

### 5.    *Bell's Suit*

Bell filed this suit in August 2020 and amended the complaint a year later.  She raises claims of discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–16, *et seq.*  At the time the suit was filed, no final agency action had been taken on either of her EEO complaints and each complaint had been pending for more than 180 days.  Am. Compl. at ¶ 2.  The government moved to dismiss Bell's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Def.'s Mot. to Dismiss.

## II.   Legal Standards

In analyzing a Rule 12(b)(6) motion, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In deciding the motion, the Court "must take all of the factual allegations in the complaint as true." Id.  It also must "constru[e] the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006).  That said, "conclusory statements" and "threadbare recitals of the elements" do not suffice. Ashcroft, 556 U.S. at 678.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and from retaliating against any employee who opposes an unlawful employment practice or participates in an employment discrimination proceeding, see id. § 2000e-3(a).  Title VII also makes it unlawful for an employer to "requir[e] people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

To plead a viable discrimination claim under Title VII, a plaintiff must allege that she suffered an "adverse employment action" because of her race, color, religion, sex, or national origin. Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  The D.C. Circuit, sitting en banc, recently overturned prior circuit precedent holding that a Title VII discrimination plaintiff must show that the challenged employment action resulted in "objectively tangible

harm." <u>Chambers v. District of Columbia</u>, 35 F.4th 870, 872 (D.C. Cir. 2022) (en banc).  Now, a plaintiff in this circuit need only show that she was discriminated against with respect to the "terms, conditions, or privileges of employment."  <u>Id.</u> at 874-75 (quoting 42 U.S.C. §2000(e)-2(a)(1)).

To state a claim of hostile work environment under Title VII, a plaintiff must allege "'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Baloch</u>, 550 F.3d at 1201 (quoting <u>Harris</u>, 510 U.S. at 21).

Lastly, to plead unlawful retaliation, a plaintiff must allege that she suffered a "materially adverse action" because she engaged in statutorily protected activity.  <u>Id.</u> at 1198.

### III.  Analysis

HUD moves to dismiss Bell's amended complaint, arguing that it fails to state a viable claim of discrimination, hostile work environment, or retaliation.  Def.'s Mot. to Dismiss at 4. The Court agrees that Bell's discrimination claims—save her allegations regarding credit hours and the letter of reprimand—and her hostile work environment claim are insufficiently pled.  As for the retaliation claim, Bell's allegations are sufficient at this early stage of the case.

#### A.  <u>Discrimination Claims</u>

Bell's discriminatory treatment claim incorporates nine alleged discrete acts: (1) Malone falsely accused her of hostility towards a coworker; (2) Malone required her to modify her telework schedule to attend a meeting; (3) Malone denied one of her credit hours requests; (4,5) Malone twice "needled" her about already-completed work; (6) Malone required her to attend an office conference that interfered with her preparations for a hearing; (7,8) Malone was "nakedly hostile" to her and twice spoke to her in a condescending tone; and (9) Malone issued her a letter

of reprimand, which was later downgraded to a counseling memorandum. [1]  Am. Compl. at ¶¶ 7-12.

HUD initially argued that none of the above incidents allege an adverse employment action sufficient to sustain a Title VII discrimination claim.  Def.'s Mot. to Dismiss at 13-14.  Its briefing—which pre-dates the D.C. Circuit's en banc ruling in Chambers—understandably emphasized the absence of tangible harm and significant changes to Bell's employment status from the allegedly discriminatory conduct.  But in the wake of Chambers, a lack of tangible harm or significant change in status is no longer grounds for dismissal when an employer allegedly discriminates against an employee with respect to the terms, conditions, or privileges of employment.  35 F.4th at 874-75, 79.  Instead, Title VII reaches even "garden-variety" discrimination as to the terms, conditions, or privileges of employment.  Chambers, 35 F.4th at 879.  As Chambers acknowledged, however, "not everything that happens at the workplace affects an employee's 'terms, conditions, or privileges of employment.'"  Id. at 874.  Title VII still is not intended to be a "general civility code" nor make actionable "the ordinary tribulations of the workplace."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotations omitted).

The D.C. Circuit in Chambers declined to further define "terms, conditions, or privileges of employment" and reserved judgment on whether Title VII includes an exception for de

---

[1] Bell does not appear to allege in her complaint, or argue in her opposition brief, that her lowered performance rating was discriminatory.  See Am. Compl. ¶¶ 7-12, 15 (incorporating paragraphs seven through twelve into her discrimination claim, while the performance review is raised in paragraph fifteen); Pl.'s Opp'n at 11-15 (raising the performance review only in the context of her "Second Retaliation Cause of Action").  HUD nonetheless raises—and then withdraws in response to Chambers—an argument that a lower performance review does not constitute an adverse employment action for the purposes of a Title VII discrimination claim.  Def.'s Mot. to Dismiss at 14; Def.'s Notice of Withdrawal.  The Court need not address HUD's arguments, as they address a claim that Bell does not advance.

minimis employer conduct.  35 F.4th at 875.  And given the preeminence of the "tangible harm"

requirement prior to Chambers, neither the briefing in this case nor decisions within our circuit

appear to have addressed these questions.  The Court therefore reviews each of Bell's

discrimination claims against the broad definition of "terms, conditions, or privileges" intended

by Congress, while also being mindful that ordinary workplace unpleasantness falls outside of

Title VII.  Compare Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986) ("[T]he language

of Title VII is not limited to 'economic' or 'tangible' discrimination.  The phrase 'terms,

conditions, or privileges of employment' evinces a congressional intent to strike at the entire

spectrum of disparate treatment." (internal quotations omitted)) with Faragher, 524 U.S. at 787

("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

amount to discriminatory changes in the terms and conditions of employment." (cleaned up)).

The Court concludes that only Bell's allegations regarding her request for credit hours

and the letter of reprimand support viable discrimination claims.  The various slights Bell lists,

considered individually or collectively, do not.  The Court takes each incident in turn.

### 1. False accusations of hostility towards a coworker

Bell maintains that Malone falsely accused her of exhibiting hostility towards a

coworker.  Am. Compl. ¶ 9(a).  Bell provides no other details to support how this interaction

implicated the terms or conditions of her employment.  She does not claim that any aspect of her

employment was affected by Malone's purported accusation.  In fact, Bell claims that she

enjoyed positive employment evaluations until her 2018-2019 annual review.  Am. Compl. ¶ 15.

Thus, this allegation does not present a discriminatory adverse action.

2.   *Requirement to attend inconvenient meetings*

Bell asserts that on two separate occasions she was required to attend inconvenient meetings: once when she was forced to adjust her telework schedule, Am. Compl. ¶ 9(b), and again when she was required to attend about six hours of meetings during a week in which she was preparing for a hearing.  Am. Compl. ¶ 9(e).  Again, the alleged conduct here does not indicate discrimination with respect to the terms and conditions of Bell's employment.  For sure, attendance policies that treat employees differently based on their protected status could plausibly affect the terms and conditions of employment.  But having to attend a few inconvenient meetings is a quintessential "ordinary tribulation[] of the workplace" beyond the concern of Title VII.

3.   *Denial of request for credit hours*

Next, Bell alleges that Malone once rejected her "wholly legitimate request for credit hours."  Am. Compl. ¶ 9(c).  While Bell offers no further details as to the significance of credit hours, it is logical, and thus plausible, that they could be tied to her compensation or vacation time.  Because those benefits are among the terms and conditions of employment, this claim may proceed.

4.   *"Needling" Bell about already-completed work*

Bell asserts that Malone twice offered her unnecessary "gentle reminders" about already-completed work.  Am. Compl. ¶ 9(d).  Such a mundane annoyance does not rise beyond the level of an ordinary workplace nuisance.  Prior decisions in this district have held that even "scrupulous monitoring" of employees does not support a discrimination claim because "it is part of the employer's job to ensure that employees are safely and properly carrying out their jobs."  Runkle v. Gonzales, 391 F. Supp. 2d 210, 226 (D.D.C. 2005) (quoting Hussain v. Principi, 344

F. Supp. 2d 86, 104-05 (D.D.C. 2004)).  While the Court need not decide whether more intrusive monitoring would be sufficient to constitute a term or condition of employment under Title VII, a few "gentle reminders" about already-complete work certainly do not.

### 5.   *"Hostile" and "condescending" interactions*

Bell alleges that on two separate occasions, Malone interacted with her in a "nakedly hostile," "condescending," and "abusive" manner, including once in the presence of coworkers. Am. Compl. ¶ 9(f-g).  But Bell offers no details on what was said or how, if at all, these incidents affected the terms and conditions of her employment.  Because these conclusory allegations do not implicate the terms and conditions of Bell's employment, they do not support her discrimination claim.

### 6.   *Issuance of the letter of reprimand*

Lastly, Malone issued Bell a letter of reprimand, which was later reduced to a counseling memorandum, for "inappropriate behavior."  Am. Compl. ¶¶ 10-12.  Bell claims the letter lacked any credible basis.  Id.  "Run-of-the mine" letters of reprimand generally are not adverse employment actions, particularly when they are not abusive and do not lead to disciplinary action.  See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 302–04 (D.D.C. 2012).  But there is no categorical prohibition on a letter of reprimand constituting an adverse employment action.  For that reason, many courts, including this one, have deferred consideration of letters of reprimand until summary judgment.  See, e.g. id. at 303 ("[L]etters of reprimand are neither *per se* actionable or non-actionable."); Baloch, 550 F.3d at 1199; Achoe v. Clayton, 2018 WL 4374926 at *7 (D.D.C. Sept. 13, 2018) (Cooper, J.) (denying motion to dismiss claim of discrimination based on a letter of reprimand); Nurriddin v. Goldin, 382 F. Supp. 2d 79, 94 (D.D.C. 2005).

Here, the Court lacks the benefit of having the actual letter or any details about its impact, if any, on Bell's employment. Accordingly, in an abundance of caution and in line with its past practice, the Court denies HUD's motion to dismiss with respect to Bell's discrimination claim based on the letter. The Court will revisit the issue at summary judgment if necessary.

B. Hostile Work Environment

Bell also contends that the individual allegations recited previously, when considered together, sufficiently plead a hostile work environment in violation of Title VII. Am. Compl. ¶ 9).

For purposes of Title VII, a hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21 (citation omitted). To determine whether such an environment exists, the Court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. As discussed, this standard is demanding because Title VII is not intended to function as a "general civility code" policing "the ordinary tribulations of the workplace." Faragher, 524 U.S. at 788 (citations omitted). Thus, the "conduct must be extreme." Id.

The conduct Bell describes is not severe enough to plausibly state a hostile work environment claim. Many of her complaints—being spoken to in a disrespectful tone, being required to attend inconvenient meetings, being reminded about deadlines—can be summarized as working for an overly demanding and insensitive boss. But working for a bad boss, by itself

at least, is not cognizable under Title VII.  See Dudley v. Washington Metro. Area Transit Auth., 924 F. Supp. 2d 141, 171 (D.D.C. 2013) ("[H]aving a rude, harsh, or unfair boss is not enough for a hostile work environment claim."); see also Johnson v. Perez, 66 F. Supp. 3d 30, 44-45 (D.D.C. 2014) (K. Jackson, J.) (collecting cases where harsh and rude conduct did not meet the standard for a discriminatory hostile work environment); Houston v. SecTek, Inc., 680 F. Supp. 2d 215, 225 (D.D.C. 2010) ("Allegations of undesirable job assignment or modified job functions and of [supervisor's] unprofessional and offensive treatment are not sufficient to establish that [plaintiff's] work environment was permeated with discriminatory intimidation, ridicule, and insult." (internal quotation omitted)).  And Bell's other allegations—that she was denied credit hours and unfairly critiqued during a performance review—are job related actions that cannot be the basis of a hostile work environment claim.  See Swann v. Office of Architect of Capitol ("Swann I"), 73 F. Supp. 3d 20, 32 (D.D.C. 2014) (Cooper, J.) (explaining that "[c]ourts in this district consistently have found that these sorts of employment-related actions"—referring to "work-related" actions such as a denial of overtime, termination of grace period for late arrival, and application of a civilian clothes decorating policy—"are not sufficiently severe or offensive to support a hostile work environment claim" (citing Wade v. District of Columbia, 780 F. Supp. 2d 1, 19 (D.D.C. 2011)), aff'd No. 15-5001, 2015 WL 5210251 (D.C. Cir. Aug. 18, 2015) (per curiam).  Bell therefore has not met the lofty standard of showing that the conduct she claims to have experienced was so offensive and severe as to create a hostile work environment actionable under Title VII.

What's more, Bell does not connect Malone's alleged mistreatment to her (Bell's) race or sex.  See Bryant v. Brownlee, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) ("Despite the sheer number of incidents of which plaintiff complains, her claim of a discriminatory hostile work environment

contains at least one glaring defect: none of the allegations give rise to an inference of discrimination by defendant based on race, color, or age.").  While Bell may have been the lone African American in the office, she does not allege that any of Malone's conduct expressly targeted her race or sex in an offensive way.  Compare Leftwich v. Gallaudet Univ., 878 F. Supp. 2d 81, 99 (D.D.C. 2012) (permitting a hostile work environment claim to survive a motion to dismiss where plaintiff alleged that he "endured offensive and insensitive remarks about his race" on "nearly a daily basis") with Bryant, 265 F. Supp. 2d. at 65 ("[P]laintiff argues that an inference of race or age discrimination is raised by the fact that she was the oldest employee and the only African-American in her department. But this is too thin a reed . . . .").  Workplace slights unconnected to any protected status do not create a hostile work environment actionable under Title VII.

    Accordingly, the Court will dismiss Bell's hostile work environment claim.

    C.   Retaliation

    Lastly, Bell asserts that the letter of reprimand issued by Malone and the "fully successful" performance review issued by Jones were acts of retaliation for her pending discrimination complaint.  Am. Compl. ¶¶ 19-20.

    To state a claim of unlawful retaliation under Title VII, a plaintiff must allege that her employer took a materially adverse action against her because she had engaged in statutorily protected activity.  Baloch, 550 F.3d at 1198.  A "materially adverse action" in the context of a retaliation claim is an action that would "dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotation omitted).

HUD only disputes whether the alleged acts were "materially adverse actions."  The Court finds that both the letter of reprimand and the performance review could plausibly dissuade other employees from engaging in protected activity and thus will deny HUD's motion to dismiss Bell's retaliation claims.

### 1.  Letter of Reprimand

Bell asserts that Malone's letter of reprimand for "inappropriate behavior"—issued three days after Malone met with a senior agency official regarding Bell's first informal discrimination complaint—was retaliation in violation of Title VII.  Am. Compl. ¶¶ 10-12, 19.  Letters of reprimand have routinely been found not to support a claim of retaliation, unless they include abusive language or disciplinary consequences.  See, e.g., Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 303 (D.D.C. 2012).  But, consistent with the Court's finding above with respect to Bell's claim that the letter was discriminatory, that determination is typically made at the summary judgment stage.  See, e.g., id.; Reshard v. Lahood, 2010 WL 1379806, at *17 (D.D.C. Apr. 7, 2010) (granting summary judgment dismissing retaliation claim based on letter of reprimand); Cochise v. Salazar, 601 F. Supp. 2d 196, 201 (D.D.C. 2009) (same).  At this stage of the litigation and without the benefit of the actual letter, the Court finds it at least plausible that its issuance was materially adverse in the retaliation context, meaning it could deter an employee from undertaking protected activity.

HUD contends that Bell cannot plausibly allege that she was dissuaded by the letter because she continued to pursue her EEO complaint and indeed filed a second complaint.  Def.'s Reply at 6.  But the agency confuses the objective standard for a materially adverse action—a "reasonable worker" would be dissuaded from pursuing their discrimination claim—with a subjective standard that the plaintiff herself be deterred.  Burlington N., 548 U.S. at 68.  HUD's

claimed standard would allow a discriminating employer to retaliate with impunity: either the potential plaintiff is deterred and does not pursue her claim, or an allegation of retaliation fails because the plaintiff was not deterred.  That cannot be correct.  Bell's continued pursuit of her discrimination claim does not doom her retaliation claim, at least at this stage of the case.

### 2.   *"Fully Successful" Performance Review*

Bell also asserts that the "fully successful" rating she received from Athena Jones was an act of retaliation.  Am. Compl. ¶¶ 15, 19-20.  Negative performance reviews can sustain a retaliation claim at least when the review results in some financial harm.  Weber v. Battista, 494 F.3d 179, 185 (D.C. Cir. 2007) (holding that a lowered performance evaluation could constitute an adverse employment action for the purposes of a retaliation claim).  Here, Bell claims that the rating, which was the lowest she ever received during her career at HUD OIG, "deprived her of a Performance Award."  Am. Compl. ¶ 15.  By alleging that the negative review disqualified her from receiving a performance award, Bell has sufficiently pled that the review constituted a materially adverse employment action.

HUD contends that Bell has not met her burden because she has not pled that receiving an award is automatic and that she would have received the award but for the poor rating.  Def.'s Mot. to Dismiss at 17.  But this sets the bar too high at the motion to dismiss stage.  It is plausible that a poor performance rating that disqualifies employees from contention for an award could deter employees from engaging in protected activity.  Bell need not prove at this stage that she was in fact financially harmed.  Thus, Bell has sufficiently stated a claim for

unlawful retaliation in violation of Title VII based on her "fully successful" performance review.[2]

## IV.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [15] Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Court hereby dismisses Plaintiff's hostile work environment claim and Plaintiff's discrete discrimination claims, except for the claims regarding her credit hours request and the letter of reprimand.  Plaintiff's retaliation claims may proceed as well.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  September 28, 2022

---

[2] HUD suggests in its reply brief that Bell has not sufficiently alleged a connection between her EEO complaint and the adverse review.  Def.'s Reply at 7 n.3.  The Court need not consider arguments raised for the first time in a reply brief.  McBride v. Merrell Dow & Pharm., Inc., 800 F.2d 1208, 1210 (D.C. Cir. 1986).  Even so, Bell alleges that Jones stated the downgraded review was caused by Bell "complaining and making disparaging remarks about office management and her colleagues."  Am. Compl. ¶ 15.  This statement could plausibly be construed as referring to Bell's ongoing discrimination claim.  Given the timing of the performance review—just weeks after notice was posted for the EEOC hearing on Bell's discrimination complaint—and Jones's purported explanation for the review, Bell has plausibly pled that the review was in retaliation for her pending EEO complaint.