## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VENETIA D. BELL**, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-2209 (CRC) |
| **SCOTT TURNER**, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

When workplace tensions arise, it can be difficult to separate ordinary friction from unlawful discrimination. This case presents precisely that challenge. Venetia Bell, a former senior attorney with the Office of Legal Counsel at the Department of Housing and Urban Development's ("HUD") Office of Inspector General, claims that, after years of stellar performance, her work life soured under new leadership due to discrimination and retaliation. Bell brings Title VII claims alleging that she was (1) denied credit hours, (2) issued a letter of reprimand, and (3) given a lower annual performance evaluation, either because of her race or sex or in retaliation for protected equal employment opportunity ("EEO") activity. HUD now moves for summary judgment. Because Bell has failed to create a genuine dispute of fact over whether discrimination or retaliation motivated any of these alleged actions, the Court will grant HUD's motion and dismiss the case.

### I.    Background

#### A.    Factual Background

Ms. Bell joined the Office of Legal Counsel in HUD's Office of Inspector General ("OIG") as a senior attorney in June 2014. ECF No. 33-21 ("Pl.'s Statement of Genuine Issues")

¶ 1.  She worked there until her retirement in February 2020.  Id.  During that time, Bell was the only African American attorney in the office.  ECF 14 ("Am. Compl.") ¶ 8.

Bell's early tenure was marked by apparent success.  She received multiple "excellent" and "outstanding" performance evaluations and was praised for her professionalism and collaboration.  Id.  Bell also served in a supervisory role during a period of office expansion.  Id.  But, as Bell describes it, things changed when new leadership arrived.  In February 2017, Maura Malone, a white female attorney, was promoted to Deputy Counsel and became Bell's immediate supervisor.  Id. ¶ 9.  According to Bell, Malone immediately adopted a hostile attitude toward her and "engaged in a campaign to harass her and discredit her work as an attorney at the OIG because she was an African American woman."  Id.  Bell further alleges that Malone treated white male attorneys with more professionalism and courtesy than her.  See id.  Bell's complaint points to several incidents during the summer and fall of 2017:

- In a mid-year performance review, Malone "falsely" accused Bell of being hostile to another attorney.  Id. ¶ 9(a).

- Malone denied Bell's request for credit hours in July 2017, despite having approved a similar request weeks earlier.  Id. ¶ 9(c); see also Pl.'s Statement of Genuine Issues ¶¶ 3–5.  Credit hours allow employees who work beyond their standard schedule to earn time off.  ECF 31-1 (Def.'s Statement of Undisputed Material Facts ("Def.'s SUMF")) ¶ 4.

- Malone issued repeated reminders to Bell about submitting assignments even when, according to Bell, the work had already been submitted.  Am. Compl. ¶ 9(d).

- Despite knowing that Bell was preparing for a Merit Systems Protection Board hearing, Malone required her to attend approximately six hours of staff meetings in one week.  Id. ¶ 9(e).  By contrast, Bell claims Malone accommodated a white male attorney with an upcoming trial by adjusting his schedule.  Id.

- Malone once treated Bell in a "nakedly hostile" and "condescending" manner in front of colleagues and, on another occasion, spoke to her in an "outright abusive" tone.  Id. ¶¶ 9(f)–(g).  Bell contends that Malone never treated white male attorneys this way.  Id. ¶ 9(g).

Following these incidents, in late September 2017, Bell complained to OIG human resources officials about Malone's behavior.  Id. ¶ 10.  The office conducted what Bell describes as an "abbreviated" and "incomplete" investigation.  Id.  Although Bell believes the inquiry supported her concerns, no corrective action was taken.  Id.

Shortly thereafter, Bell initiated an informal EEO complaint with HUD's civil rights office.  Id.  Bell asserts that Malone learned of her EEO complaint in October and received a copy on November 17, 2017.  Id.  A senior agency official, Brian Pattinson, was appointed to investigate Bell's complaint.  Id.  He met with Malone on November 20, 2017, to discuss the allegations.  Id.

Four days later, Malone issued Bell a formal letter of reprimand for "inappropriate behavior."  See id. ¶ 11; Def.'s SUMF ¶ 17.  The reprimand was authorized by Malone's supervisor, Acting Deputy Inspector General Jeremy Kirkland.  Am. Compl. ¶ 11.  In the letter, Malone critiqued Bell for her unwillingness to "comply with management requests," her "hostility," and her "refusal to participate."  Def.'s Ex. 5 ("Letter of Reprimand"), ECF 31-2 at 63–65 (page numbers designated by CM/ECF).  Specifically, Malone pointed to an email exchange in which she asked Bell to participate in a meeting later that day.  Id. at 64.  Bell responded that she had planned to take a late lunch and exercise and then independently emailed the client to propose rescheduling.  See id.  And, when Malone insisted the meeting proceed as scheduled, Bell questioned why she was only just being informed and what her role in the meeting would be.  Id.

In March 2018, Malone switched positions and ceased serving as Bell's supervisor.  Am. Compl. ¶ 12.  Athena Jones, who had overseen the earlier HR inquiry, assumed the role.  Id. About a week later, Malone reissued the reprimand as a counseling memorandum.  Id.

According to Bell, Malone entered her office unannounced and insisted that she sign the document.  Id.

Bell claims that she asked both Jones and Kirkland to intervene to stop what she described as "continued bullying and abusive behavior," but they took no action.  Id. ¶ 13.  In October 2019, the EEOC issued a notice of hearing on Bell's complaint, which she had since upgraded to a formal complaint.  Id. ¶ 14.

Soon after the hearing was scheduled, Jones informed Bell that she would receive a "fully successful" performance rating for the 2018–2019 period—her lowest rating to date.  Id. ¶ 15.  The lower rating allegedly made Bell ineligible for a performance award.  Id.  Bell claims that the written evaluation included positive feedback inconsistent with the rating, and that Jones justified the score in a later conversation by citing complaints Bell made about management and her colleagues.  Id.  The agency counters that the rating was based on Bell's repeated comments that she would do the bare minimum to get by and performance that lived up to this promise, as well as Bell's hostile attitude toward coworkers.  ECF 31 ("Mot. Summ. J.") at 14–15.  Bell then filed a second informal complaint, followed by another formal EEO complaint in January 2020, alleging retaliation for her prior protected activity.  Am. Compl. ¶¶ 2, 16.

B.  Procedural History

Bell filed this lawsuit in August 2020, raising claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, et seq.  See ECF 1 (Compl.) ¶¶ 17–20.[1]  Bell amended her complaint a year later and added allegations of a hostile

---

[1] Bell named as Defendant then-Secretary of HUD Benjamin Carson in his official capacity.  Per Federal Rule of Civil Procedure 25(d), the Court substitutes Scott Turner, the individual currently holding this office, as the named Defendant.

work environment.  <u>See</u> Am. Compl. ¶ 9.  HUD moved to dismiss Bell's amended complaint

under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  <u>See</u> ECF 15 at 4.  The

Court dismissed Bell's hostile work environment claim but allowed parts of her discrimination

and retaliation claims to proceed to discovery.  <u>Bell v. Fudge</u>, No. 20-CV-2209 (CRC), 2022 WL

4534603, at *8 (D.D.C. Sept. 28, 2022).

The remaining claims concern: (1) the denied request for credit hours, (2) the letter of

reprimand that Malone issued to Bell in November 2017 for "inappropriate behavior," and (3)

the "fully successful" performance evaluation that Jones issued to her in November 2019.

Following discovery, HUD now moves for summary judgment on these remaining claims.

## II.    Legal Standards

### A.  <u>Summary Judgment</u>

To prevail on a motion for summary judgment, the moving party bears the burden of

demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 247–48 (1986); <u>Holcomb v. Powell</u>, 433 F.3d 889, 895–96 (D.C. Cir. 2006).  A

fact is "material" if it can affect the outcome of the litigation.  <u>Liberty Lobby</u>, 477 U.S. at 248;

<u>Holcomb</u>, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.  <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007);

<u>Liberty Lobby</u>, 477 U.S. at 248; <u>Holcomb</u>, 433 F.3d at 895.

In considering a motion for summary judgment, the Court must resolve all factual

disputes and draw "all justifiable inferences" in favor of the nonmoving party.  <u>Liberty Lobby</u>,

477 U.S. at 255; <u>see also</u> <u>Mastro v. Pepco</u>, 447 F.3d 843, 850 (D.C. Cir. 2006).  But the

nonmoving party's opposition must consist of more than mere allegations or denials; instead, it

must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  "The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial."  Eddington v. U.S. Dep't of Def., 35 F.4th 833, 836–37 (D.C. Cir. 2022) (citation modified).

  B. McDonnell Douglas

   Title VII discrimination and retaliation claims are generally analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination or retaliation.  Id. at 802.  "The D.C. Circuit, however, has instructed that when considering a motion for summary judgment in an employment discrimination [or retaliation] case, a district court need not consider whether a plaintiff has actually satisfied the elements of a prima facie case if the defendant has offered a legitimate, non-discriminatory [or nonretaliatory] reason for its actions."  Musgrove v. Gov't of D.C., 775 F. Supp. 2d 158, 169 (D.D.C. 2011) (citing Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008)).  Upon the articulation of a legitimate reason for the alleged discriminatory or retaliatory adverse action, the burden shifts back to the plaintiff to rebut the defendant's stated reason as pretextual.  See id. at 170.  The plaintiff can "carry this burden by showing that a non-discriminatory [or nonretaliatory] reason offered by [the] defendant is false" or by "presenting enough evidence to allow a reasonable trier of fact to conclude that the employer's proffered explanation is unworthy of credence."  Id.

## III.  Analysis

At this stage, the Court must determine whether a reasonable factfinder could conclude that HUD (1) denied Bell's request for credit hours, (2) issued her a letter of reprimand[2] in November 2017, or (3) rated her performance as "fully successful" in November 2019 for discriminatory or retaliatory reasons rather than HUD's stated justifications.  Because the record cannot support such a finding as to any of HUD's actions, HUD is entitled to summary judgment on all of Bell's claims.

### A.  Discrimination Claims

The Court begins with Bell's Title VII discrimination claims, which she bases on two incidents: Malone's denial of her credit-hours request and Malone's issuance of a letter of reprimand.  Am. Compl. ¶¶ 9(c), 11.  HUD contends it is entitled to summary judgment because it had legitimate, nondiscriminatory reasons for both these actions.  Mot. Summ. J. at 6.

Where "a defendant has asserted a legitimate, non-discriminatory reason for its conduct, the Court shall evaluate all of the evidence in the record" to assess the reason's legitimacy.

---

[2] As the Court noted in its ruling on HUD's motion to dismiss, "letters of reprimand are neither *per se* actionable or non-actionable."  Bell, 2022 WL 4534603, at *6 (citation modified). Without the benefit of having the letter before it, the Court could not determine at that stage whether it qualified as an adverse employment action under Title VII.  Id.  The Court stated it would revisit the issue at summary judgment if necessary.  Id.  Now that the case has reached summary judgment, and the government does not dispute that the letter is an adverse action, the Court deems the issue forfeited.  See Bright v. Copps, 828 F. Supp. 2d 130, 148 (D.D.C. 2011) ("treat[ing] as conceded" argument that challenged conduct "did not constitute an adverse action" because plaintiff "failed to respond"); Day v. D.C. Dep't of Consumer & Regul. Affs., 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").

Washington v. Chao, 577 F. Supp. 2d 27, 39 (D.D.C. 2008). The inquiry "collapses into a single question: 'Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?'" Id. (quoting Brady, 520 F.3d at 494).

### 1. *Denial of Credit Hours*

HUD insists that Malone denied Bell's request for credit hours in July 2017 because she was on a compressed work schedule. Mot. Summ. J. at 8. At the time, the agency's personnel policies provided that employees on compressed work schedules were not eligible for credit hours, see Def.'s Ex. 3 § 4-2, ECF 31-2 at 48, and Bell was working four ten-hour days per week instead of the usual five eight-hour days, see Pl.'s Statement of Genuine Issues ¶ 5.

Bell does not dispute that HUD's internal policy barred her request on its face. See ECF 33 ("Opp'n") at 9. But she testified that she had maintained the same work schedule since joining HUD, and her credit-hours requests had "always" been approved prior to this denial— including by Malone herself only one month earlier. ECF 33-1 ("Bell Depo.") at 45:7–46:3, 50:7–23; Pl.'s Statement of Genuine Issues ¶ 6. Bell contends that HUD's "selective enforcement of [its] policies" is "evidence of discrimination in violation of Title VII." Clayton v. District of Columbia, 117 F. Supp. 3d 68, 79 (D.D.C. 2015) (citing Baker v. Macon Res. Inc., 750 F.3d 674, 677 (7th Cir. 2014)).

While "selective" or "erratic" application of an otherwise legitimate policy "by [an] employer may *suggest* pretext," Mohammed v. Cent. Driving Mini Storage, Inc., 128 F. Supp. 3d 932, 952 (E.D. Va. 2015) (emphasis added), it is not enough to survive summary judgment on a

discrimination claim.  Instead, Bell must link that potentially pretextual justification to discrimination based on a protected characteristic.  She has not.

Bell offers only her own treatment as evidence of selective enforcement.  She has produced no evidence that HUD treated similarly situated comparators differently—for example, by denying Bell's request while approving the request of an individual of a different race or sex.  Without additional proof of a discriminatory motive, selective enforcement as to Bell alone does not create an inference that HUD enforced the credit-hours policy along race- or sex-based lines.  To the contrary, the fact that the same supervisor previously approved one of Bell's requests makes it less likely that she later denied another because of Bell's race or sex, given that these characteristics never changed.

In an attempt to show discriminatory animus, Bell resorts to her own uncorroborated testimony about her perception that Malone generally treated white male colleagues more favorably than her.  See Bell Depo. at 22:5–16, 24:24–25:4, 26:25–27:5, 55:12–56:18, 57:14–25 (Bell's deposition testimony that Malone spoke to her in "a disrespectful tone" while speaking to white males as "equals," gave her less explanation for assignments, and imposed requirements on her not applied to them); ECF 33-9 ("Bell Decl.") ¶ 10 (Bell's declaration recounting how Malone treated her in a "condescending" manner that she did not use with white male employees).  The Court must consider Bell's testimony and declaration even though they are uncorroborated and could be characterized as self-serving.  See United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency, 859 F.3d 1085, 1092 (D.C. Cir. 2017) ("[A] party may oppose summary judgment with sworn testimony."); United States v. Johnson, 823 F.3d 701, 710 (D.C. Cir. 2016) ("[E]vidence a party proffers in support of its cause will usually, in some sense, be 'self-serving[,]'" but "[i]t is nonetheless beyond question . . . that

parties . . . are legally competent to give material testimony" and may be "the key, or even sole, witnesses.").

Still, Bell's subjective, generalized beliefs about Malone's attitude, standing alone, are not enough to create a factual dispute over whether Malone denied Bell's credit-hours request for discriminatory reasons.  See Moses v. Kerry, 110 F. Supp. 3d 204, 213 (D.D.C. 2015) (where plaintiff "could point only to his own beliefs and suspicions" about discriminatory motive, "[t]hese unfounded assertions" could not "enable [him] to overcome summary judgment"); Dunning v. Ware, 253 F. Supp. 3d 290, 295 (D.D.C. 2017) ("Subjective assertions by a plaintiff . . . without any evidence to support them are insufficient . . . to support summary judgment." (citation modified)); Henderson v. Mass. Bay Transp. Auth., 977 F.3d 20, 29 (1st Cir. 2020) ("The plaintiff's subjective belief of discrimination is not sufficient to withstand summary judgment." (citation modified)); Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000) (refusing to "rely on [plaintiff's] subjective belief that [defendant] discriminated against him").  Because the record does not support a finding that the agency denied Bell's request for credit hours based on her race or sex, the Court will grant HUD's motion for summary judgment as to this claim.

### 2.  *2017 Letter of Reprimand*

HUD next argues that Malone issued the letter of reprimand because of Bell's unprofessional conduct, including missed meetings and insubordinate emails.  Mot. Summ. J. at 10.  As noted above, the specific incident that allegedly prompted the letter involved Bell responding to a meeting request by telling Malone she had planned to take a late lunch and exercise, emailing the client directly to reschedule, and questioning Malone about why she had just been informed and what her role would be.  Def.'s Exs. 6, 7, ECF 31-2 at 68, 70 (emails

between Malone and Bell).  HUD maintains this response was "unprofessional and disrespectful."  Letter of Reprimand, ECF 31-2 at 64–65.  Bell does not dispute the exchange.  See Opp'n at 15–16.

HUD's justification for the letter is "facially legitimate" because a reasonable person could find Bell's communications unprofessional and disrespectful.  Holmes v. Wash. Metro. Area Transit Auth., 723 F. Supp. 3d 1, 20 (D.D.C. 2024).  The burden thus shifts back to Bell to rebut HUD's legitimate reason with evidence that the reprimand was motivated by her race or sex.  She has not done so.  Her briefing focuses solely on retaliation, see Opp'n at 17–18, which the Court addresses below.  Accordingly, the Court will grant summary judgment to the agency on Bell's discrimination claim arising from the letter of reprimand.

B.  Retaliation Claims

The Court now turns to Bell's retaliation claims, which concern two actions: the letter of reprimand and Bell's receipt of a "fully successful" performance evaluation.  Am. Compl. ¶¶ 11, 14–15.  HUD again contends that it acted for legitimate, nonretaliatory reasons.  Mot. Summ. J. at 9–16.

To establish retaliation, a plaintiff must show: "first, that she engaged in protected activity; second, that she was subjected to adverse action by the employer; and third, that there existed a causal link between the adverse action and the protected activity."  Broderick v. Donaldson, 437 F.3d 1226, 1231–32 (D.C. Cir. 2006).

As in the discrimination context, in cases where the defendant offers a legitimate, nonretaliatory reason for the alleged wrongful conduct, the "central question" at summary judgment boils down to whether the employee has "produced sufficient evidence for a reasonable jury to find that the employer's asserted . . . non-retaliatory reason was not the actual

11

reason [for its adverse action] and that the employer intentionally . . . retaliated against the employee."  Walker v. Johnson, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

### 1.  2017 Letter of Reprimand

As the Court explained, HUD maintains the reprimand was prompted by Bell's conduct, Mot. Summ. J. at 10, a justification that is facially legitimate and nonretaliatory.  The burden therefore shifts to Bell to demonstrate that HUD's stated reason was a fig leaf for retaliation. Walker, 798 F.3d at 1092.

Bell points to Malone's knowledge of her EEO complaint and the three-day gap between that complaint and the reprimand.  Opp'n at 17–18.  But Malone's "mere knowledge" of Bell's protected activity is insufficient to show a retaliatory motive.  Brown v. Mills, 674 F. Supp. 2d 182, 197 n.8 (D.D.C. 2009); Barry v. U.S. Capitol Guide Bd., 636 F. Supp. 2d 95, 107 (D.D.C. 2009).  Nor is the temporal proximity between Bell's EEO activity and the reprimand enough to overcome HUD's stated reason.  Tobey v. U.S. Gen. Servs. Admin., 480 F. Supp. 3d 155, 167 (D.D.C. 2020) ("[T]emporal proximity, without more, is insufficient at the summary judgment stage to overcome an employer's legitimate, nonretaliatory reason." (citing Minter v. District of Columbia, 809 F.3d 66, 72 (D.C. Cir. 2015)).

Having produced no "positive evidence" of retaliatory motive for the reprimand, Bell has failed to create a genuine issue of material fact on this issue.  Solomon v. Vilsack, 763 F.3d 1, 16 (D.C. Cir. 2014) (citation modified).  Accordingly, the Court will grant HUD's motion for summary judgment as to this claim.

### 2.  2019 Performance Evaluation

Finally, Bell claims her 2019 "fully successful" performance evaluation by Anita Jones was retaliatory.  Am. Compl. ¶ 15.  HUD explains that this rating reflected Bell's admitted intent

to do only the "bare minimum" and her continued hostility toward colleagues, specifically

Malone.  Mot. Summ. J. at 14.  As support, HUD cites Jones's testimony recounting specific

examples of Bell's behavior, such as Bell declining to enhance a training module, dragging her

feet on assignments, and telling Jones she would not speak to Malone and did not want her near

her desk.  Mot. Summ. J. at 14–16; <u>see also</u> Def.'s Ex. 11 ("Jones Aff.") ¶ 26, ECF 31-2 at 91;

Def.'s Ex. 12 ("Jones Dep.") at 83:5–14; 85:9–22, 116:6–19, ECF 31-2 at 95, 97, 99.  Bell does

not dispute the specific examples of her behavior Jones offered.  In fact, in her comments to her

performance evaluation, she admitted that she had told Jones that she was "not motivated to

continue to go 'above and beyond'" because she did "not want to be viewed as accepting the

hostile work environment" to which she alleged she was subjected.  Def.'s Ex. 10 ("2019

Performance Evaluation"), ECF 31-2 at 85.

The Court finds these performance-based reasons for Bell's rating facially legitimate.

Bell seeks to rebut them by arguing that Jones's written evaluation included only positive

feedback, and that criticism of Bell's attitude toward Malone was a disguised attempt to

discourage her from engaging in protected activity against Malone.  But a "fully successful"

rating is not inconsistent with positive written feedback.  As Jones testified, the rating meant that

Bell "did an okay job, that everything was satisfactory, that it wasn't unsatisfactory; she did what

was expected."  Jones Dep. at 122:15–21, ECF 31-2 at 101.  Bell herself admitted in her written

comments to the evaluation that Jones gave her oral feedback about her "bare minimum"

comments, professionalism, and attitude.  2019 Performance Evaluation, ECF 31-2 at 85.

HUD's justification for the rating in this litigation is thus consistent with its contemporaneous

explanations.  Cf. <u>Allen v. Johnson</u>, 795 F.3d 34, 46 (D.C. Cir. 2015) ("Changes and

inconsistencies in the stated reasons for the adverse action may give rise to an inference of pretext." (citation modified)).

Nor was the agency barred from considering Bell's conduct toward the subject of her EEO activity in evaluating her performance.  Bell could have pursued her EEO claims against Malone while remaining cordial to her; incivility is not protected.  Accordingly, because Bell has not shown that HUD's justifications were pretextual, she has failed to rebut its legitimate, nondiscriminatory reasons for the lower performance rating, and HUD is entitled to summary judgment on that claim.

To hold otherwise would produce a perverse result:  Employers would be unable to honestly review, or otherwise discipline, employees who purposefully curtail their performance pending completion of an EEO process without exposing themselves to an additional retaliation claim.

### IV.    Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment.  A separate Order shall accompany this memorandum opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date: June 12, 2025